UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| VELTOR COTTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03909-TWP-DML |
| | ) | |
| C.O. LOCKE and C.O. SPIKER | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on Defendants Correctional Officer Locke and Correction Officer Spikers (collectively "the Defendants") Motion for Summary Judgment. (Dkt. 30). Plaintiff Veltor Cotton ("Mr. Cotton") filed this action on December 12, 2018, alleging his civil rights were violated while he was incarcerated in the Indiana Department of Correction ("IDOC"). Mr. Cotton claims that the defendants used excessive force on September 3, 2018, when they pulled him from the stairs and caused him to hit his head. The defendants moved for summary judgment arguing that Mr. Cotton failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit.

**Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir.

2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).

Once the moving party has met its burden, the non-movant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "The non-movant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted).

**Facts**

At all times relevant to his complaint, Mr. Cotton was confined by the IDOC at Pendleton Correctional Facility. The IDOC has a grievance process which is intended to permit inmates to resolve concerns and complaints relating to their conditions of confinement prior to filing suit in court. As an IDOC inmate, Mr. Cotton had access to the grievance process. All inmates are made aware of the grievance process during orientation and a copy of the grievance process is available in various locations within the prisons. Dkt. 30-1.

The grievance process consists of three steps. First, if informal attempts to resolve an inmate's concern fail, he files a formal grievance. Second, if the inmate is not satisfied with the response to the formal grievance, he may submit an appeal to the warden. Finally, if the inmate is not satisfied with the response from the warden or the warden's designee, he may file an appeal to the department grievance manager. Exhaustion of the grievance procedure requires pursuing a

grievance to the final step. A grievance must be filed within ten (10) business days from the date of the alleged incident. *Id*.

The IDOC's grievance records for Mr. Cotton reflect that he did not file any grievances related to the September 3, 2018, incident.

**Discussion**

The defendants argue that Mr. Cotton failed to exhaust his available administrative remedies as required by the PLRA with respect to his claims against them.

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

Strict compliance is required with respect to exhaustion, and a prisoner must properly follow the prescribed administrative procedures in order to exhaust his remedies. *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). The PLRA's exhaustion requirement is not subject to either waiver by a court or futility or inadequacy exceptions. *Booth v. Churner,* 532 U.S. 731, 741, n.6 (2001); *McCarthy v. Madigan,* 503 U.S. 140, 112 S. Ct. 1081 (1992) ("Where Congress specifically mandates, exhaustion is required.").

"An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). For example, an administrative procedure is unavailable when "it operates as a simple dead end," when it "might be so opaque that it becomes, practically speaking, incapable of use" or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

It is the defendant's burden to establish that the administrative process was available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it.").

The defendants assert, and Mr. Cotton does not dispute, that he was informed of the grievance policy when he arrived at Pendleton Correctional Facility, and that he had access to the policy at all times. Dkt. 30-1. The defendants have provided Mr. Cotton's grievance history which reveals that he did not submit any grievances related to the September 3, 2018, incident. Mr. Cotton has not provided any evidence to dispute the grievance history produced by the defendants.

Included in the grievance files produced by the defendants is a grievance filed by Mr. Cotton on September 30, 2018, regarding an incident that occurred on September 14, 2018, involving the defendants in this action. Dkt. 30-5, p.3. Although the grievance references the prior incident with the defendants on September 3, 2018, the subject of the grievance is clearly a separate incident that occurred nearly two weeks later.

In his response, Mr. Cotton states that the defendants gave false reports to excuse their excessive force and that he "diligently attempted to follow the procedures that was intentlly (sic)

4

manipulated to protect CO workers and that the officers immediate supervisors knew of the incident and Cotton's complaint or complaints being denied out of retaliation." Dkt. 33.

To the extent Mr. Cotton alleges that administrative remedies were unavailable to him because they were manipulated by prison staff, the evidence he provides does not support his assertion. He has not provided any evidence of any attempt to follow the formal grievance procedure such as a description of how and when he attempted to grieve the September 3, 2018, incident or how his attempts were thwarted by staff. There is no evidence that prison staff interfered with any attempt by Mr. Cotton to grieve the incident.

Mr. Cotton provides requests for interview and other documents in which he complains that his grievances are being wrongly denied as untimely, but it is not clear from his exhibits that these complaints related to a grievance regarding the September 3, 2018, incident, let alone that Mr. Cotton ever attempted to file a grievance regarding that incident. Therefore, Mr. Cotton has failed to demonstrate that the administrative remedies process was unavailable.

It is undisputed that Mr. Cotton failed to exhaust his available administrative remedies as required by the PLRA before filing this lawsuit. The consequence of these circumstances, in light of 42 U.S.C. § 1997e(a), is that Mr. Cotton's action should not have been brought and must now be dismissed without prejudice. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice.").

In his response, Mr. Cotton asks the Court to allow him to exhaust his remedies now. But post-filing exhaustion of administrative remedies does not establish compliance with the requirements of the statute. *See Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004) ("Ford's real problem . . . is timing. Section 1997e(a) says that exhaustion must precede litigation."). Mr. Cotton may refile his suit once he has exhausted his administrative remedies.

5

## Conclusion

The defendants' motion for summary judgment, dkt. [30], is **granted**. Final judgment in accordance with this Order shall issue at this time.

Because this action must be dismissed without prejudice for failure to exhaust administrative remedies, the plaintiff's motion for discovery related to his underlying damages, dkt. [36], is **denied as moot**.

**IT IS SO ORDERED.**

Date: 8/12/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

VELTOR COTTON
174763
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Lyubov Gore
INDIANA ATTORNEY GENERAL
lyubov.gore@atg.in.gov

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov